IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JONATHAN FRANKLIN WADKINS,
SANDRA KAY WADKINS, and
FRANKLIN MARTIN WADKINS                                               PLAINTIFFS

v.                                                  CIVIL ACTION NO. 1:14-cv-00209-GHD-DAS

KEISHA ELIZABETH WERNER and
JOHN ALLEN WERNER, III                                                  DEFENDANTS

## MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS' CORRECTED MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS

Presently before the Court is a motion to dismiss or, in the alternative, for judgment on the pleadings [17] filed by Defendants Keisha Elizabeth Werner and John Allen Werner, III ("Defendants"). Plaintiffs Jonathan Franklin Wadkins, Sandra Kay Wadkins, and Franklin Martin Wadkins ("Plaintiffs") have filed a response, and Defendants have filed a reply. On June 11, 2015, the Court held a hearing on the motion to give the parties an opportunity to present oral argument on the motion. Upon due consideration, the Court finds that the motion should be granted in part and denied in part as set forth below.

### A. *Legal Standards*

Defendants characterize their motion as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. A Rule 12(c) motion is governed by the same standards as a Rule 12(b)(6) motion—that is, the Court must determine upon a review of the pleadings whether the plaintiff has stated a valid claim for relief. *See Brown v. CitiMortgage,*

1

*Inc.*, 472 F. App'x 302, 303 (5th Cir. 2012) (per curiam) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)).

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367, at 509–10 (1990)). So, too, when deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint. *See Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (per curiam) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)).

"[A plaintiff's] complaint . . . 'must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ' " *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (per curiam) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (internal

quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993) (internal quotation marks omitted)). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.'" *Emesowum v. Hous. Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).

The Fifth Circuit has explained the *Iqbal/Twombly* standard as follows:

> In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise more than a sheer possibility that the defendant has violated the law as alleged. . . . In determining whether a complaint states a claim that is plausible on its face, the court draws on its judicial experience and common sense.

*Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 950 (5th Cir. 2009) (per curiam) (internal quotation marks and citations omitted).

Although the Court need not "accept as true conclusory allegations or unwarranted deductions of fact," *see Great Plains Trust Co.*, 313 F.3d at 313, dismissal is appropriate only "when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief," *id.* at 302–03. "The issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

3

## B. *Discussion and Analysis*

Plaintiffs allege that Defendants violated several sections of the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq*.[1] Plaintiffs also assert state-law claims for intentional infliction of emotional distress and invasion of privacy. Plaintiffs bring their claims under the auspices of federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367(a).

With respect to the Federal Wiretap Act claims, first, Plaintiffs allege that Defendants violated 18 U.S.C. § 2511(1)(a) and (b) when they allegedly intercepted the private oral communications of Plaintiffs using a device that they had purchased in the District of Columbia and subsequently transported back to Mississippi in interstate commerce. Second, Plaintiffs allege that Defendants violated 18 U.S.C. § 2511(1)(c) when they disclosed the contents of the subject recordings to their attorney in the state-court proceeding. Finally, Plaintiffs allege that when Defendants' attorney in the state-court proceeding disclosed the contents of the subject recordings to Plaintiffs' attorney in discovery in the ongoing state-court child custody case, Defendants were endeavoring to use the contents of the intercepted oral communication and were in violation of 18 U.S.C. § 2511(1)(d).

Defendants make several arguments in support of dismissal, including that Plaintiffs' complaint fails to state a claim upon which relief can be granted and seeks to improperly involve the federal court in a child custody proceeding that does not fall within the purview of the Federal

---

[1] The statute, commonly referred to in the Fifth Circuit as the Federal Wiretap Act or the Wiretap Act, is "formally known as Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986 and the Communications Assistance for Law Enforcement Act of 1994." *See United States v. Moore*, 452 F.3d 382, 386 n.2 (5th Cir. 2006). "The basic purpose of the statute . . . is to 'protec[t] the privacy of wire[, electronic,] and oral communications.' " *Bartnicki v. Vopper*, 532 U.S. 514, 526, 121 S. Ct. 1753, 149 L. Ed. 2d 787 (2001) (quoting S. Rep. No. 1097, 90th Cong., 2d Sess., 66 (1968), U.S. Code Cong. & Admin. News 1968, pp. 2112, 2153).

Wiretap Act. Defendants further argue that the recordings of communications, which are the subject of this litigation, occurred solely in the State of Mississippi, and Defendants' act of purchasing the recording device outside of the State of Mississippi does not establish the federal nexus requirement of claims brought under the Federal Wiretap Act—though Defendants acknowledge they could locate no Fifth Circuit case law stating this federal nexus requirement. Defendants further argue that the Court should decline to exercise jurisdiction over all claims asserted by Plaintiffs.

The Fifth Circuit has characterized 18 U.S.C. § 2511 as "primarily a criminal provision," stating in pertinent part that "anyone who intentionally intercepts any electronic communication, as described in subsections (1)(a) through (e), is subject to criminal penalties as provided in subsection (5)." *DIRECTV, Inc. v. Bennett*, 470 F.3d 565, 566–67 (5th Cir. 2006) (citing 18 U.S.C. § 2511(1)). However, the Fifth Circuit has recognized that "Section 2520(a) expressly allows private civil suits by any person whose electronic communication is intercepted in violation of 'this chapter' of the statute." *Id.* at 567. The Fifth Circuit has explained:

> Section 2520 allows "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter" to recover appropriate relief from the person or entity which engaged in the violation in a civil action. 18 U.S.C. § 2520(a). This section establishes that the violations for which civil actions are allowed are those described in this "chapter." Chapter 119, Wire and Electronic Communications Inceptions and Interception of Oral Communications, includes [S]ection 2511 which prohibits the intentional interception of any wire, oral, or electronic communication. 18 U.S.C. § 2511(1)(a).

*Id.* at 568.

This case is of a type sometimes brought under the Federal Wiretap Act: the alleged violations of 18 U.S.C. § 2511(1) were motivated by a domestic dispute wherein the identity of the

5

persons allegedly intercepting the communication was known. *See Bartnicki v. Vopper*, 532 U.S. 514, 530, 121 S. Ct. 1753, 149 L. Ed. 2d 787 (2001). Indeed, "[t]he legislative history of the 1968 Act indicates that Congress' concern focused on private surveillance 'in domestic relations and industrial espionage situations.' " *Id.* at 530 n.16 (quoting S. Rep. No. 1097, 90th Cong., 2d Sess., 225 (1968), U.S. Code Cong. & Admin. News 1968, pp. 2112, 2274).

Most federal and state courts have held that interspousal wiretapping falls within the purview of the Federal Wiretap Statute. The Fourth, Sixth, Eighth, Tenth, and Eleventh Circuits have held that such wiretapping is actionable under the Federal Wiretap Act. *See Glazner v. Glazner*, 347 F.3d 1212 (11th Cir. 2003); *Heggy v. Heggy*, 944 F.2d 1537, 1539 (10th Cir. 1991); *Kempf v. Kempf*, 868 F.2d 970, 972–73 (8th Cir. 1989); *Pritchard v. Pritchard*, 732 F.2d 372, 374 (4th Cir. 1984); *United States v. Jones*, 542 F.2d 661, 667 (6th Cir. 1976). *Accord Gill v. Willer*, 482 F. Supp. 776, 778 (W.D. N.Y. 1980); *Kratz v. Kratz*, 477 F. Supp. 463, 473–75 (E.D. Pa. 1979); *Remington v. Remington*, 393 F. Supp. 898, 901 (E.D. Pa. 1975); *W. Va. Dep't of Health & Human Res. ex rel. Wright v. David L.*, 453 S.E.2d 646, 652 (W. Va. 1994); *People v. Otto*, 831 P.2d 1178, 1185 (Cal. 1992); *Ex parte O'Daniel*, 515 So. 2d 1250, 1253 (Ala. 1987); *Pulawski v. Blais*, 506 A.2d 76, 77 n.2 (R.I. 1986); *Rickenbaker v. Rickenbaker*, 226 S.E.2d 347, 352 (N.C. 1976).

Both the Second and Fifth Circuits have held that interspousal wiretaps may fall within the purview of the Federal Wiretap Act, but not in all factual scenarios. *See Anonymous v. Anonymous*, 558 F.2d 677, 679 (2d Cir. 1977); *Simpson v. Simpson*, 490 F.2d 803, 810 (5th Cir.), *cert. denied*, 419 U.S. 897, 95 S. Ct. 176, 42 L. Ed. 2d 141 (1974). *Accord Stewart v. Stewart*, 645 So. 2d 1319, 1321 (Miss. 1994); *Baumrind v. Ewing*, 279 S.E.2d 359, 360 (S.C. 1981).

In *Anonymous v. Anonymous*, the Second Circuit stated:

> Congress was not unaware of the growing incidence of interspousal wiretaps, and did not intend to blanketly except them from the Act's coverage. The issue becomes at what point interspousal wiretaps leave the province of mere marital disputes, a matter left to the states, and rise to the level of criminal conduct proscribed by the federal wiretap statutes.

558 F.2d at 677. In that case, an ex-wife brought a civil damages action under Section 2520 against her ex-husband for allegedly violating the Federal Wiretap Act by recording the ex-wife's telephone conversations with their eight-year-old daughter, who was residing with and in the exclusive custody of her father at the time of the recordings. *Id.* at 677–78. The Second Circuit held that—even though the case was brought as a civil action—the facts alleged did not rise to the level of criminal conduct intended to be covered by the Federal Wiretap Act. *Id.* at 677. In that case, the ex-husband had purchased at a local retail store a telephone answering machine, which he plugged into the telephone jack in his apartment; the ex-husband then allegedly instructed their son to hit the "record" button on the answering machine whenever the ex-wife called so that he could record the ex-wife's conversations with their daughter. *Id.* at 678. The ex-wife claimed that her ex-husband intended to use these tapes against her in a later custody fight for their daughter. *Id.* The Second Circuit expressed concern with criminalizing conduct involving a father listening in on conversations between his wife and his eight-year-old daughter from his home phone, recognized such conduct as a domestic conflict between former spouses, and reasoned that "[t]he fact that appellee here taped the conversations which he permissibly overheard . . . [was] a distinction without a difference." *Id.* at 679. The Second Circuit explained: "We do not condone the husband's activity in this case, nor do we suggest that a plaintiff could never recover damages

from his or her spouse under the federal wiretap statute. We merely hold that the facts of this case do not rise to the level of a violation of that statute." *Id.*

In *Simpson*, the Fifth Circuit was confronted with the following issue in the context of a suit by the wife for civil damages against her husband pursuant to Section 2520: "Is the interception by a husband using electronic equipment of the conversations of his wife with a third party over the telephone in the marital home included in the [scope of the Federal Wiretap Act]?" 490 F.2d at 804. The Fifth Circuit answered the question "no," but acknowledged that "the language and legislative history of the Act leaves the question in considerable doubt." *Id.* In examining the Federal Wiretap Act, the Fifth Circuit acknowledged that "[t]he naked language of [the Federal Wiretap Act] by virtue of its inclusiveness, reaches this case," but "we are of the opinion that Congress did not intend such a farreaching result, one extending in to the areas normally left to states, those of the marital home and domestic conflicts." *Id.* at 805. The Fifth Circuit also expressed reluctance to extend the reach of the Federal Wiretap Act without "indications of congressional intent and awareness," "given the severity of the remedy seemingly provided by [the Federal Wiretap Act]." *Id.* at 805–06.

In a subsequent decision concerning the Federal Wiretap Act, the Fifth Circuit acknowledged its *Simpson* decision was an example of the Fifth Circuit's "past experiences . . . that construction of the Wiretap Act is fraught with trip wires." *Forsyth v. Barr*, 19 F.3d 1527, 1542–1543 (5th Cir. 1994). Although the *Simpson* holding has been hotly criticized by many courts, it remains binding law in the Fifth Circuit. "It is a firm rule of this circuit that in the absence of an intervening contrary or superseding decision by [the Fifth Circuit] sitting *en banc* or by the United States Supreme Court," even another panel of the circuit cannot overrule a prior

8

panel's decision. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999); *United States v. Setser*, 607 F.3d 128, 131–32 (5th Cir. 2010). Because *Simpson* is the law of the Fifth Circuit, this Court must follow it. Furthermore, the reasoning underlying the *Simpson* decision—that the particular facts of the case presented a domestic dispute not suited for federal court jurisdiction—is based on longstanding principles of federal jurisprudence.

The United States Supreme Court's statements with respect to original civil actions for divorce, alimony, and child custody brought in federal court under the auspices of diversity jurisdiction are instructive: "[S]tate courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling [the] issues [involved]." *Ankenbrandt v. Richards*, 504 U.S. 689, 703–04 112 S. Ct. 2206, 119 L. Ed. 2d 468 (1992). However, the Supreme Court clarified that "claims of a kind traditionally adjudicated in federal courts, for example, tort or contract claims, are not excepted from federal-court jurisdiction simply because they arise in a domestic relations context." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 190 n.6, 118 S. Ct. 523, 139 L. Ed. 2d 525 (1997) (citing *Ankenbrandt*, 504 U.S. at 704, 112 S. Ct. 2206).

Similarly, the Fifth Circuit has given the following "reasons for the federal judiciary's traditional refusal to exercise diversity jurisdiction in domestic relations cases: 'the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts.' " *Jagiella v. Jagiella*, 647 F.2d 561, 564 (5th Cir. 1981) (quoting *Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir.

1978)). In that case, the Fifth Circuit quoted language from a district court opinion, *Bacon v. Bacon*, 365 F. Supp. 1019 (D. Ore. 1973):

> "The language of the complaint shows this to be part of an ongoing series of disputes centering around the dissolved but still stormy relationship and the status of and harm to their children.
>
> "(I)f this case were allowed to be maintained, United States District Courts would be deluged with domestic relations cases, all containing initially colorable tort claims of 'extreme and outrageous conduct resulting in severe emotional distress' where the parties have placed (a state border) between themselves in an attempt to escape each other.
>
> "For this and other policy reasons, a judicial exception to federal jurisdiction has been created with respect to intra-family feuds."

*Id.* at 1020.

No court in the Fifth Circuit has examined a factual scenario like the one in the case *sub judice*—a civil action under the Federal Wiretap Act involving a couple who was never married, but whose relationship produced a child, and which involves allegations that certain persons, including the mother of the child, placed a recording device in the child's diaper bag for the purpose of recording conversations of the father of the child, as well as his parents. However, the following cases present somewhat similar facts and are instructive for this Court on the issue.

In *Gerke v. Bagley*, No. H-10-2319, 2010 WL 4102893 (S.D. Tex. Oct. 18, 2010), the plaintiffs alleged that one of the plaintiffs and one of the defendants were married but in the process of divorcing when the defendant placed a voice-activated recording device in the plaintiffs' home without their knowledge or consent. *Id.* at *1. The plaintiffs alleged that the defendant's conduct constituted violations of the Federal Wiretap Act, the Texas state wiretap statute, and their state right to privacy; the plaintiffs further alleged that the conduct intentionally

inflicted emotional distress. *Id.* The United States District Court for the Southern District of Texas drew a distinction between the claims brought by the former spouse of the defendant, finding that those claims concerned interspousal wiretapping that constituted a domestic dispute and were properly dismissed as not falling within the purview of the statute. However, the court sustained the claims brought by the other plaintiffs who were "never married to [the defendant]." *Id.* at *4. The court also sustained the remaining state-law claims, as the same were not challenged by the defendants. *Id.*

Similarly, in *Kirkland v. Franco*, 92 F. Supp. 2d 578 (E.D. La. Apr. 17, 2000), the United States District Court for the Eastern District of Louisiana was confronted with a factual scenario wherein a husband purchased a telephone recording device from an electronics store and placed it on an extension telephone in the couple's bedroom without his wife's knowledge in order to record conversations between the wife and a person with whom she was allegedly having an extramarital affair; the couple subsequently divorced, and the ex-wife brought the action against her ex-husband claiming violations of the Federal Wiretap Act and the Louisiana state wiretapping statute. *Id.* at 578–79. The court dismissed the claims by the ex-wife against her ex-husband as falling outside the purview of the Federal Wiretap Act, but sustained the claims brought by the other plaintiff, reasoning that "the decision does not apply to [the other plaintiff] because she was never his spouse." *Id.* at 580.

Additionally, in *Gaubert v. Gaubert*, No. Civ.A. 97–1673, 1999 WL 10384 (E.D. La. Jan. 7, 1999), an ex-wife brought a civil action against her ex-husband, alleging that his connection of a recording device to the telephone at their home that recorded telephone conversations between her and third parties was a violation of the Federal Wiretap Act. *Id.* at *1. The United States District

Court for the Eastern District of Louisiana drew a distinction between the facts of that case and the facts in *Simpson*, reasoning that the facts that the spouses were separated and thus not living in the same home and had filed for divorce took the case out of any domestic relations realm that would except it from the reach of the Federal Wiretap Act. *Id.*[2]

The following are undisputed facts in the case *sub judice*. Although they were never married, Plaintiff Jonathan Franklin Wadkins and Defendant Keisha Elizabeth Werner were in a romantic relationship that produced a child born January 28, 2012; subsequently, the two ended their relationship and eventually married other people. Pls.' Compl. [1] ¶¶ 9–10; Defs.' Corrected Answer & Defenses [19] ¶¶ 9–10. The father of the child, Plaintiff Jonathan Franklin Wadkins, filed a complaint to establish paternity and custody of the child on September 18, 2012 in the Chancery Court of Alcorn County, Mississippi; the matter has been hotly contested since; and on November 26, 2012, Chancellor Jacqueline Mask entered a Temporary Order granting the parties temporary joint legal and physical custody of the minor child. Pls.' Compl. [1] ¶¶ 11–12; Defs.' Corrected Answer & Defenses [19] ¶¶ 11–12; Temporary Order [1] at 15–16. All Plaintiffs, including the father of the child and his own parents, and Defendants, including the mother of the child and her spouse, are normally present for the exchange of the child and the child's diaper bag containing various items. Pls.' Compl. [1] ¶ 13; Defs.' Corrected Answer & Defenses [19] ¶ 13.

---

[2] In a somewhat factually similar case, *Norman v. Norman*, No. Civ. A. 95-2395, 1996 WL 75584 (E.D. La. Feb. 15, 1996), a woman discovered her home telephone conversations were being wiretapped while divorce proceedings were pending between her and her husband. *Id.* at *1. Both parties signed an agreement during the divorce proceedings wherein they agreed not to disclose the contents of the telephone conversation recordings nor institute any civil proceedings against each other arising from the taping of the telephone conversations. *Id.* at *1–*2. Despite this agreement, the ex-wife filed a civil action pursuant to the Federal Wiretap Act against her ex-husband alleging, *inter alia*, that the recordings violated the Federal Wiretap Act. *Id.* at *2. The United States District Court for the Eastern District of Louisiana declined to reach the interspousal wiretapping issue, finding that dismissal was appropriate because the ex-wife had entered into a valid compromise under Louisiana law which barred the suit. *Id.* at *5. Thus, *Norman* is not instructive on the issue at hand.

In late 2013, Defendants traveled to Washington D.C., purchased a recording device, and brought it back to the State of Mississippi. Pls.' Compl. ¶ 15; Defs.' Corrected Answer & Defenses [19] ¶ 14. Subsequently, Defendant Keisha Elizabeth Werner turned on the recording device; Defendant John Allen Werner, III verbally stated the date; Defendant Keisha Elizabeth Werner placed the recording device into the child's diaper bag; and Defendant John Allen Werner, III gave the diaper bag to Plaintiff Franklin Martin Wadkins, who placed the diaper bag containing the recording device into his automobile in the presence of the minor child. Pls.' Compl. [1] ¶ 16; Defs.' Corrected Answer & Defenses [19] ¶ 16. The following week, when the child was returned to Defendants, the diaper bag was also transferred to Defendants, who listened to the recorded communications. Pls.' Compl. [1] ¶ 18; Defs.' Corrected Answer & Defenses [19] ¶ 18. At a subsequent exchange of the child and diaper bag, Defendants placed the recording device in the diaper bag, and Defendant John Allen Werner, III transferred the diaper bag to Plaintiff Franklin Martin Wadkins, who placed it in his automobile. Pls.' Compl. [1] ¶ 19; Defs.' Corrected Answer & Defenses [19] ¶ 19. When the child was returned to Defendants, Defendants listened to the newly recorded communications. Pls.' Compl. [1] ¶ 19; Defs.' Corrected Answer & Defenses [19] ¶ 19. Defendants subsequently gave the recording device and tapes to their attorney, who sent a copy to Plaintiffs' attorney during discovery in the ongoing child custody litigation. Pls.' Compl. [1] ¶ 21; Defs.' Corrected Answer & Defenses [19] ¶ 22. As stated, the child custody proceedings between the mother and father of the child are ongoing and hotly contested, and thus were ongoing and hotly contested when the undisputed facts giving rise to this case occurred.

In this Court's view, Plaintiff Jonathan Franklin Wadkins, the father of the child, and Defendant Keisha Elizabeth Werner, the mother of the child, both of whom have an ongoing state-court custody battle, are not appropriate parties to this case. The undisputed facts forming the claims between these two parties are part and parcel of the underlying state-court child custody proceedings, do not fall within the purview of the Federal Wiretap Act, and fail to state a claim. The Court further finds that it would be improper to exercise federal jurisdiction over these claims, which may involve federal law but are still creatures of state law, particularly that concerning child custody law. Accordingly, such claims are dismissed.

As to the claims for intentional infliction of emotional distress and invasion of privacy between Plaintiff Jonathan Franklin Wadkins and Defendant Keisha Elizabeth Werner, this Court finds that due to considerations of comity and the expertise of the state courts in dealing with such domestic disputes, the exercise of supplemental jurisdiction over the remaining state-law claims would be inappropriate. *See* 28 U.S.C. § 1367(c); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988). Accordingly, the state-law claims between Plaintiff Jonathan Franklin Wadkins and Defendant Keisha Elizabeth Werner shall be dismissed without prejudice. Plaintiff Jonathan Franklin Wadkins may attempt to file these claims against Defendant Keisha Elizabeth Werner in state court.

However, the Federal Wiretap Act claims brought by Plaintiffs Sandra Kay Wadkins and Franklin Martin Wadkins against Defendants Keisha Elizabeth Werner and John Allen Werner, III shall proceed. In addition, the Federal Wiretap Act claims brought by Plaintiff Jonathan Franklin Wadkins against Defendant John Allen Werner, III (the mother's spouse) shall proceed. Plaintiffs Sandra Kay Wadkins and Franklin Martin Wadkins have adequately stated a claim

pursuant to Rule 12(b)(6) that their oral communications were intercepted by Defendants Keisha Elizabeth Werner and John Allen Werner, III in violation of the Federal Wiretap Act. *See* 18 U.S.C. § 2520(a). And Plaintiff Jonathan Franklin Wadkins has adequately stated a claim pursuant to Rule 12(b)(6) that his oral communications were intercepted by Defendant John Allen Werner, III in violation of the Federal Wiretap Act.

Defendants have not specified a legal basis for dismissing the remaining state-law claims for invasion of privacy and intentional infliction of emotional distress, and the same shall proceed as brought by Plaintiffs Sandra Kay Wadkins and Franklin Martin Wadkins against Defendants Keisha Elizabeth Werner and John Allen Werner, III and as brought by Plaintiff Jonathan Franklin Wadkins against Defendant John Allen Werner, III.

The Court notes that the present motion before the Court is a motion to dismiss under Rule 12(b)(6) or Rule 12(c), and as such, pertains to pleadings only. The Court can address challenges to these claims on a motion for summary judgment after discovery and the development of a record.

## C. Conclusion

In sum, Defendants' motion to dismiss or, in the alternative, for judgment on the pleadings [17] is GRANTED IN PART AND DENIED IN PART, as follows:

(1) All federal claims brought by Plaintiff Jonathan Franklin Wadkins against Defendant Keisha Elizabeth Werner are DISMISSED;

(2) All state law claims brought by Plaintiff Jonathan Franklin Wadkins against Defendant Keisha Elizabeth Werner are DISMISSED;

(3) All federal and state law claims brought by Plaintiff Jonathan Franklin Wadkins

15

(4) All federal and state law claims brought by Plaintiffs Sandra Kay Wadkins and Franklin Martin Wadkins against Defendants Keisha Elizabeth Werner and John Allen Werner, III shall PROCEED.

A separate order in accordance with this opinion shall issue this day.

THIS, _17th_ day of June, 2015.

_____
SENIOR U.S. DISTRICT JUDGE

16